1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TONY APPLEBY,                          No. 2:20-CV-2113-WBS-DMC-P

12                    Plaintiff,

13         v.                                FINDINGS AND RECOMMENDATIONS

14    ALEX FARHAT,

15                    Defendant.

16

17              Plaintiff, who is proceeding pro se, brings this civil rights action under 42 U.S.C.

18    § 1983. Pending before the Court is Defendant's unopposed motion for summary. See ECF No.

19    47.

20              The Federal Rules of Civil Procedure provide for summary judgment or summary

21    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

22    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

23    the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard

24    for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c);

25    see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal

26    purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp.

27    / / /

28    / / /

                                                     1

1    v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

2
3    . . . always bears the initial responsibility of informing the district court of
the basis for its motion, and identifying those portions of "the pleadings,
depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any," which it believes demonstrate the absence of a
4    genuine issue of material fact.

5    Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

6            If the moving party meets its initial responsibility, the burden then shifts to the

7    opposing party to establish that a genuine issue as to any material fact actually does exist. See

8    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

9    establish the existence of this factual dispute, the opposing party may not rely upon the

10   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11   form of affidavits, and/or admissible discovery material, in support of its contention that the

12   dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The

13   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

14   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

15   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

16   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

18   (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than

19   simply show that there is some metaphysical doubt as to the material facts. . . . Where the record

20   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

21   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the

22   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

23   of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

24           In resolving the summary judgment motion, the Court examines the pleadings,

25   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

26   See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477

27   U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

28   court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

2

1    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2    produce a factual predicate from which the inference may be drawn. <u>See Richards v. Nielsen</u>

3    <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

4    1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

5    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

6    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

7    imposed." <u>Anderson</u>, 477 U.S. at 251.

8

9                                            **I. BACKGROUND**

10           A.      **Procedural History**

11                   Plaintiff initiated this action with a pro se complaint. <u>See</u> ECF No. 1. On August 4,

12   2021, the Court issued an order finding service of complaint appropriate and directing service.

13   <u>See</u> ECF No. 11. After waiving service of process, Defendant filed an answer on October 29,

14   2021.  <u>See</u> ECF No. 22.  On January 21, 2022, the Court ordered a discovery and scheduling

15   order. <u>See</u> ECF No. 27.  Following several modifications to the schedule, discovery closed and

16   Defendant filed the pending motion for summary judgment.  <u>See</u> ECF No. 47.  Plaintiff has not

17   filed an opposition.

18           B.      **Plaintiff's Allegations**

19                   This action proceeds on Plaintiff's original complaint.  <u>See</u> ECF No. 1. Plaintiff

20   brings a claim against Defendant Alex Farhat, who is Plaintiff's primary care physician working

21   for the California Department of Corrections and Rehabilitation (CDCR). <u>See id.</u> at 8. Plaintiff

22   allegedly made numerous complaints to Defendant regarding prescribed medically needed shoes.

23   <u>See</u> pg. Plaintiff reported severe pain because of the lack of shoes to Defendant. <u>See id.</u> at 9.

24   Defendant allegedly only prescribed Tylenol and Ibuprofen for pain relief yet Plaintiff still had

25   pain. <u>See id.</u> Plaintiff allegedly attempted to participate in group therapy about one and a half

26   miles away which caused extreme pain for Plaintiff's feet. <u>See id.</u> Plaintiff claims officers needed

27   to get a wheelchair six different times to help move Plaintiff. <u>See id.</u> Plaintiff allegedly asked

28   defendant for a wheelchair of his own and defendant stated he had ordered one. <u>See id.</u> Plaintiff

3

1    claims after eight months defendant failed to get the orthopedic shoes or wheelchair to Plaintiff.

2    See id. Defendant's nurse allegedly gave Plaintiff a packet about conditions associated with

3    remedies and put Plaintiff on "light-duty" work. See id. at10. Plaintiff claims he was expected to

4    work before any remedies could be provided. See id. While working Plaintiff allegedly found a

5    room with an unused wheelchair that needed medical staff approval. See id. at 11. Plaintiff claims

6    to have asked defendant for use of that wheelchair but was denied. See id. Plaintiff claims in the

7    absence of the wheelchair he experienced more severe pain due to walking and working. See id.

8    Plaintiff claims to have attempted different remedies for his condition, but nothing works. See id.

9    at 11-12. Plaintiff alleges he has trouble getting out of bed to get his medication and that it hurts

10   to sit. See id. at 12. Plaintiff claims that the medical staff is aware of Plaintiff's pain from the

11   constant complaints. See id.

12          Plaintiff brings forth one Eighth Amendment claim against Defendant. See id. at 3.

13   Plaintiff claims that Defendant refused to provide, braces, mobility-aides, rest periods, and any

14   other effective pain relief. See id. at 13. Plaintiff alleges that Defendant ordered a wheelchair and

15   then never followed up on it. See id. Plaintiff alleges that when he found a wheelchair, Defendant

16   did not permit him to use it. See id.  Plaintiff claims Defendant classified Plaintiff to work and

17   caused him to become more disabled. See id. Plaintiff claims that he confronted Defendant with

18   the facts of his pain, and that Defendant refused any accommodations. See id. at 14. Plaintiff

19   alleges Defendant's actions show a deliberate indifference to his serious medical needs and

20   resulted severe emotional or mental pain and anguish. See id.

21

22                              **II. THE PARTIES' EVIDENCE**

23          Defendants' motion for summary judgment is supported by a separate statement of

24   undisputed facts, ECF No. 47-1, the declaration of from Defendant A. Farhat, ECF No. 47-2, the

25   declaration of J. Chavez, ECF No. 47-3, the declaration of E. Takehara, ECF No. 47-4, the

26   declaration of B. Besse, ECF No. 47-5, the declaration of V. LaBerge, ECF No. 47-6, and the

27   declaration of R. Zalesny, ECF No. 47-7.

28   / / /

1    / / /

2         According to Defendant, the following relevant facts are not in dispute:

3              * * *

4         2.    Defendant is a physician at CHCF (California Health Care
5    Facility) who, at all times relevant to this action, was Plaintiff's primary
     care physician. Farhat Decl. at ¶ 2; Farhat Decl. Ex. 1.

6         3.    Plaintiff claims that Defendant violated Plaintiff's Eighth
7    Amendment right to medical treatment for plantar fasciitis during the first
     6-15 months of Plaintiff's incarceration at CHCF. Pl.'s Compl., ECF No. 1
     at § D, ¶ 1; *id.* at pp. 7-12; Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 72:3-6,
8    74:12-17.

9         4.    Plantar fasciitis is inflammation of the plantar fascia, the
10   tissue running along the bottom of the foot between the heel and the
     middle of the foot. Farhat Decl. at ¶ 5.

11        5.    Appropriate treatment of plantar fasciitis occurs in phases
12   beginning with the least invasive. Farhat Decl. at ¶ 5.

13        6.    Initial treatments include pain medications such as
     Ibuprofen and Tylenol, stretching, and activity modification including rest
14   and wearing shoes when walking or running. Farhat Decl. at ¶ 5.

15        7.    Orthotics and physical therapy also are appropriate
     treatments, especially if initial efforts are not effective. Farhat Decl. at ¶ 5.

16        8.    For patients who find no relief with these efforts, a doctor
17   may prescribe stronger pain medication or steroid injections. Farhat Decl.
     at ¶ 5.

18        9.    For intractable cases of plantar fasciitis, referral to a
19   podiatrist for consideration of surgery may be appropriate. Farhat Decl. at
     ¶ 5.

20        10.   On September 12, 2019, Plaintiff arrived at CHCF without
21   his orthopedic shoes. Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 187:2-20;
     Takehara Decl. Ex. 1.

22        11.   After his arrival at CHCF, Plaintiff received tennis shoes
     from another inmate, which felt better than the prison-provided shoes.
23   Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 141:12-22, 142:8-11, 143:10-21.

24        12.   Plaintiff has regularly attended group therapy throughout
     his incarceration at CHCF. LaBerge Decl. at ¶ 5; LaBerge Decl. Ex. 3;
25   Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 39:22-23, 105:16-18, 113:10-12.

26        13.   To do so, Plaintiff walked approximately a quarter to a half
27   of a mile. Pl.'s Compl., ECF No. 1 at p. 9; Zalesny Decl. Ex. 4, Pl.'s Dep.
     Tr. 113:10-16.

28   / / /

1

2      14.     Although Plaintiff did not attend several group therapy
       sessions, Plaintiff went to group therapy at least once on each of the
3      following days: October 3-4, 9-12, 15-16, 18, 23-26, and 29-31, 2019;
       November 1, 4-7, 19-21, and 25- 26, 2019; December 16-19, 23-24, 26,
       and 30, 2019; January 8-9, 13-16, 21-22, and 27-30, 2020; February 3-5,
4      10-13, 17-20, and 24-27, 2020; and March 9-10, 2020. LaBerge Decl. Ex.
       3.

5
                             * * *
6
             16.     Plaintiff attended group therapy on the following days:
7      March 11-12, 16-17, 19, and 23, 2020; June 16, 18, and 30, 2020; July 16,
       21, 23, 29, and 31, 2020; August 11, 2020; September 10, 2020; October
8      12, 14, 19, 21, 26, and 28, 2020; and November 2, 4, 9, 16, 18, and 25,
       2020. LaBerge Decl. Ex. 3.
9
                             * * *
10
             19.     Plaintiff's first office visit with Defendant was on October
11     9, 2019. Farhat Decl. at ¶ 6; Farhat Decl. Ex. 2.

12           20.     According to Plaintiff's medical record from this office
       visit, Plaintiff was "brought to [the] outpatient housing unit due to
13     concerns for impairment of memory"; Plaintiff "told his [primary care
       physician] he was forgetting at times to shower and change his clothes";
14     and Plaintiff reported right knee pain and no difficulty walking. The
       October 9, 2019, medical record does not record that Plaintiff reported
15     plantar fasciitis or that he needed orthopedic shoes. Farhat Decl. Ex. 2.

16           21.     Defendant prescribed Ibuprofen and Tylenol to Plaintiff as
       needed for pain. Plaintiff continuously received Ibuprofen and Tylenol
17     while Defendant treated him. Farhat Decl. at ¶ 6; Farhat Decl. Ex. 2;
       Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 28:17-18, 29:15-25, 30:1-22, 31:1-5,
18     73:10-13, 91:8-19.

19           22.     Plaintiff testified that he had memory loss, did not
       remember his first meeting with Defendant, and did not remember the
20     October 9, 2019, visit. Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 80:25, 81:1-2,
       108:9-18, 109:10-11.
21
             23.     Plaintiff claims that he informed Defendant of his foot pain
22     and need for orthopedic shoes at that visit and denies that he said he had
       no difficulty walking. Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 109:23-25,
23     110:1-3, 110:21-25, 111:1-24.

24           24.     Other than his medical records, Plaintiff has no evidence
       showing when he first complained to Defendant of pain in his feet.
25     Zalesny Decl. Ex. 1, Def.'s Req. for Produc. Nos. 2-3, 10; Zalesny Decl.
       Ex. 6, Pl.'s Resp. to Def.'s Req. for Produc. Nos. 2-3, 10; Zalesny Decl.
26     Ex. 3, Def.'s Interrog. to Pl. No. 9; Zalesny Decl. Ex. 6, Pl's Resp. to
       Def.'s Interrog. to Pl. No. 9; Zalesny Decl. Ex. 5; Zalesny Decl. Ex. 4,
27     Pl.'s Dep. Tr. 100:3-25, 101:1-4.

28

/ / /

25.    Plaintiff testified, "I have to go on what the medical say on a lot of it." Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 101:2-4.

26.    Defendant does not independently recall the first time Plaintiff raised a concern related to his feet. Throughout the time that Defendant treated Plaintiff, Defendant was aware of Plaintiff's ability to walk. Farhat Decl. at ¶¶ 7, 14.

27.    If Plaintiff reported foot pain on dates in October 2019 through January 2020 which are not reflected in Plaintiff's medical records, Defendant would have recommended Ibuprofen and Tylenol and preventative measures such as stretching, activity modification, and wearing shoes when walking. Farhat Decl. at ¶ 7.

28.    On October 13, 2019, a nurse informed Defendant of Plaintiff's request for an antifungal cream for his feet. Farhat Decl. at ¶ 8. Farhat Decl. Ex. 3.

29.    On October 14, 2019, Defendant ordered an anti-fungal cream for Plaintiff's feet. Farhat Decl. at ¶ 8. Farhat Decl. Ex. 3.

30.    On October 17, 2019, Plaintiff reported to Defendant that he was experiencing intermittent chest pain. For the remainder of 2019, Defendant's treatment of Plaintiff focused on Plaintiff's cardiac symptoms. Farhat Decl. at ¶ 9; Farhat Decl. Ex. 4.

31.    On November 7, 2019, Defendant ordered a stress test to evaluate Plaintiff's chest pain and discussed preventative measures for Plaintiff's chronic conditions. Plaintiff's medical record from this office visit does not record that Plaintiff reported foot pain or that he needed orthopedic shoes. Farhat Decl. at ¶ 9; Farhat Decl. Ex. 5.

32.    On November 8, 2019, Plaintiff reported cardiac symptoms to another physician and was sent to an outside hospital for an assessment. LaBerge Decl. Ex. 4-6.

33.    At the time of his transport to the hospital, Plaintiff was able to walk. LaBerge Decl. Ex. 5.

34.    At the hospital, when asked about his medical history, Plaintiff did not identify plantar fasciitis or any other problem with his feet. LaBerge Decl. Ex. 6.

35.    In a November 27, 2019, follow-up, a consulting cardiologist reported that Plaintiff had generally been physically active. LaBerge Decl. Ex. 7.

36.    On December 5, 2019, Defendant ordered an additional cardiology test and discussed preventative measures for Plaintiff's chronic conditions. Plaintiff's medical record from this office visit does not record that Plaintiff reported foot pain or that he needed orthopedic shoes. Farhat Decl. at ¶ 9; Farhat Decl. Ex. 6.

7

/ / /

37.    During an office visit on December 31, 2019, at 11:46 a.m., Defendant recommended an EKG as soon as possible when Plaintiff has chest palpitations and discussed preventative measures for Plaintiff's chronic conditions. Plaintiff's medical record from this office visit does not record that Plaintiff reported foot pain or that he needed orthopedic shoes. Farhat Decl. at ¶ 9; Farhat Ex. 7.

38.    On December 31, 2019, at 1:54 p.m., Defendant entered an order for permanent "Therapeutic Shoes/Orthotics" for Plaintiff. Plaintiff received orthotic arch supports on December 31, 2019. Farhat Decl. at ¶ 10; Farhat Decl. Ex. 8; Zalesny Decl. Ex. 2, Def.'s Req. for Admis. To Pl. No. 2-4; Zalesny Decl. Ex. 6, Pl.'s Resp. to Def.'s Req. for Admis. To Pl. No. 2-4; Chavez Decl. Ex. 1.

39.    Generally, additional time is required to provide a patient with therapeutic shoes than is required to provide orthotic inserts. Farhat Decl. at ¶ 10; Chavez Decl. at ¶ 6.

40.    On January 23, 2020, Plaintiff reported foot pain to a nurse. Farhat Decl. at ¶ 11; Farhat Decl. Ex. 9.

41.    On January 24, 2020, Plaintiff reported foot pain to a nurse. Farhat Decl. at ¶ 11; Farhat Decl. Ex. 9.

42.    On January 24, 2020, Plaintiff reported to a nurse that he did not have his orthopedic shoes upon his arrival and has never received them. Farhat Decl. at ¶ 11; Farhat Decl. Ex. 9.

43.    On January 28, 2020, a nurse noted swelling in Plaintiff's bilateral lower extremities, but that Plaintiff was walking without difficulty. Farhat Decl. at ¶ 11; Farhat Decl. Ex. 9.

44.    Later, on January 28, 2020, Defendant ordered orthotics for Plaintiff and entered the following details: "Orthotics Evaluation, hammer toe, therapeutic shoes. Lost previous therapeutic shoes. [History] of hammer toe[]. Ambulatory." Farhat Decl. at ¶ 12; Farhat Decl. Ex. 10.

45.    Plaintiff was required to attend a specialized orthotics evaluation before his orthopedic shoes could be replaced. Farhat Decl. at ¶ 12.

46.    Defendant also ordered Plaintiff a temporary wheelchair. Farhat Decl. at ¶ 12; Farhat Decl. Ex. 11.

* * *

48.    Defendant's entry of treatment orders into his patients' charts ensures that the staff members responsible for dispensing treatment receive Defendant's orders. Farhat Decl. at ¶ 12.

* * *

50.    Plaintiff continued to report foot pain on January 29, 2020. Farhat Decl. at ¶ 13; Farhat Decl. Ex. 12.

8

1

2             51.      According to nursing staff, Plaintiff had no new issues on January 29, 2020. Farhat Decl. at ¶ 13; Farhat Decl. Ex. 12.

3             52.      Defendant discussed preventative measures for Plaintiff's chronic conditions on January 29, 2020. Farhat Decl. at ¶ 13; Farhat Decl.

4    Ex. 12.

5             53.      On February 3, 2020, the orthotics evaluation was approved. LaBerge Decl. Ex. 8.

6

7             54.      On February 6, 2020, Plaintiff twice walked unassisted to the pantry and returned to his cell before walking to the back of his housing unit. Farhat Decl. at ¶ 14; Farhat Decl. Ex. 13.

8

9             55.      Plaintiff did not demonstrate signs or symptoms of pain or discomfort. Farhat Decl. at ¶ 14; Farhat Decl. Ex. 13.

10            56.      The next day, a nurse attempted to inform Plaintiff that his orthopedic shoes and wheelchair were pending. Farhat Decl. at ¶ 14;

11    Farhat Decl. Ex. 13.

12            57.      On February 13, 2020, the same nurse observed Plaintiff soaking his feet; noted that Plaintiff "comes out of his room daily [and]

13    walks around [the housing] unit with[]out any distress"; and informed Plaintiff that his wheelchair was pending dispensation and his orthotics

14    order was pending an appointment. Farhat Decl. at ¶ 14; Farhat Decl. Ex. 13.

15                * * *

16

17            62.      During a February 24, 2020, office visit with Defendant, Plaintiff reported chronic pain in his feet due to plantar fasciitis. Farhat

18    Decl. at ¶ 15; Farhat Decl. Ex. 14.

19            63.      Defendant noted that Plaintiff was "able to walk to group and back" and was "seen walking through the day room all day." Farhat

20    Decl. Ex. 14.

21            64.      Defendant instructed Plaintiff to limit walking except to attend group therapy and not to wear sandals or walk barefoot. Farhat

22    Decl. at ¶ 15; Farhat Decl. Ex. 14; Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 114:18-25, 115:1-3.

23            65.      Defendant recommended exercises for pain relief, including heel raises, calf stretches, and toe curls. Farhat Decl. at ¶ 15;

24    Farhat Decl. Ex. 14; Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 115:5-8.

25            66.      Defendant referred Plaintiff to a physical therapist and noted that Plaintiff was pending an orthotics evaluation. Farhat Decl. at ¶

26    15; Farhat Decl. Ex. 14.

27            67.      On April 3, 2020, a nurse informed Defendant that Plaintiff continued to complain of foot pain. Farhat Decl. at ¶ 16; Farhat Decl. Ex.

28    15.

68.     On April 6, 2020, Defendant instructed the nurse to have Plaintiff take Ibuprofen and Tylenol and to ensure that Plaintiff wore shoes when walking. Farhat Decl. at ¶ 16; Farhat Decl. Ex. 15.

69.     Later that day, a medical assistant informed Defendant that Plaintiff's orthotics evaluation was cancelled due to the COVID-19 pandemic. Farhat Decl. at ¶ 16; Farhat Decl. Ex. 15.

70.     On April 13, 2020, a physical therapist notified Defendant that physical therapy was not available for Plaintiff due to COVID-19 and requested that Defendant discharge his physical-therapy order. Farhat Decl. at ¶ 16; Farhat Decl. Ex. 15.

71.     On May 14, 2020, Defendant renewed his physical-therapy order. Farhat Decl. at ¶ 17; Farhat Decl. Ex. 16.

72.     On May 17, 2020, and June 9, 2020, Plaintiff complained that his pain medications were insufficient. Farhat Decl. at ¶ 18; Farhat Decl. Ex. 17.

73.     Defendant maintained his treatment plan for Plaintiff's plantar fasciitis because, in Defendant's judgment, Plaintiff's plantar fasciitis did not justify stronger pain medication. Farhat Decl. at ¶ 18; Farhat Decl. Ex. 17.

74.     On June 15, 2020, Plaintiff's orthotics evaluation was cancelled "until further notice" due to the COVID-19 pandemic. Farhat Decl. at ¶ 19; Farhat Decl. Ex. 18.

75.     On July 13, 2020, Defendant renewed his physical-therapy order. Farhat Decl. at ¶ 20; Farhat Decl. Ex. 19.

76.     Plaintiff was assigned to work as a porter beginning July 16, 2020. Takehara Decl. Ex. 2-3.

* * *

78.     Defendant assigned Plaintiff to limited duty because of his cardiac condition. Farhat Decl. at ¶ 24.

79.     In Defendant's professional opinion, Plaintiff's plantar fasciitis was not significantly disabling because Plaintiff consistently demonstrated his ability to walk without assistance. Farhat Decl. at ¶ 24.

80.     On July 20, 2020, Defendant entered an order for "Therapeutic Shoes/Orthotics Supply" for Plaintiff. That day, Plaintiff received orthopedic arch supports. Farhat Decl. at ¶ 20; Farhat Decl. Ex. 20; Chavez Decl. Ex. 2; Zalesny Decl. Ex. 2, Def.'s Req. for Admis. to Pl. Nos. 19-21; Zalesny Decl. Ex. 6, Pl.'s Resp. to Def.'s Req. for Admis. to Pl. Nos. 19-21.

81.     On July 22, 2020, a nurse noted that Tylenol seemed to assist in managing Plaintiff's foot pain. Farhat Decl. at ¶ 21; Farhat Decl. Ex. 21.

1

2    82.    On August 5, 2020, Defendant saw Plaintiff and monitored his plantar fasciitis condition, which did not include significant changes. Farhat Decl. at ¶ 22, Farhat Decl. Ex. 22.

3

4    83.    On September 2, 2020, Defendant saw Plaintiff and monitored his plantar fasciitis condition, which did not include significant changes. Farhat Decl. at ¶ 22, Farhat Decl. Ex. 22.

5

6    84.    On September 30, 2020, the orthotics evaluation and physical therapy were still pending. Defendant recommended evaluation for night splints and ordered an orthotics evaluation including night splints for plantar fasciitis. Farhat Decl. at ¶ 22; Farhat Decl. Ex. 23.

7

8    85.    Plaintiff received a third pair of orthotic arch supports on October 6, 2020. Chavez Decl. Ex. 3; Zalesny Decl. Ex. 2, Def.'s Req. for Admis. to Pl. Nos. 22-23; Zalesny Decl. Ex. 6, Pl.'s Resp. to Def.'s Req. for Admis. to Pl. Nos. 22-23.

9

10

11    86.    On October 22, 2020, a nurse informed Defendant that Plaintiff continued to complain of foot and back pain despite taking Tylenol and Ibuprofen and soak and elevate his feet without relief and stated that Plaintiff's orthotics evaluation was still pending. Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.

12

13

14    87.    Defendant recommended that Plaintiff stretch his feet. Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.

15    88.    Defendant recommended that Plaintiff rest his feet. Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.

16

17    89.    The next day, Plaintiff complained that he was unable to stay off of his feet because he was required to go to work. Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.

18

19    90.    On October 26, 2020, a nurse observed Plaintiff walk toward the nursing station and, when asked how he was doing, complain of pain in his feet. Farhat Decl. at ¶ 25; Farhat Decl. Ex. 25.

20

21    91.    According to nursing staff, Plaintiff reported that he did not take Tylenol or Ibuprofen because these medications did not work. Farhat Decl. at ¶ 25; Farhat Decl. Ex. 25.

22

23    92.    The next day, nursing staff informed Defendant that Plaintiff refused all of his medications again because of pain when going to his door to take his medication, and Defendant opined that Plaintiff had pain in his feet because he was not taking his medication. Farhat Decl. at ¶ 25; Farhat Decl. Ex. 25.

24

25

26    93.    Defendant did not issue any new orders because Plaintiff had Tylenol and Ibuprofen to keep on his person, which he was not taking, and Plaintiff's plantar fasciitis did not justify stronger pain medication. Farhat Decl. at ¶ 25; Farhat Decl. Ex. 25.

27

28

///

94. During an office visit on October 28, 2020, Defendant explained to Plaintiff the importance of taking all of his medications. Farhat Decl. at ¶ 26; Farhat Decl. Ex. 26.

95. Plaintiff continued to complain of foot pain through December 2020 and was reported not to take his medications because he did not find them effective. Farhat Decl. at ¶ 27; Farhat Decl. Ex. 27.

96. Defendant continued treating Plaintiff's plantar fasciitis until 2022 when Defendant stopped serving as Plaintiff's primary care physician. Farhat Decl. at ¶ 28.

97. On January 25, 2021, another doctor addressed Plaintiff's foot pain and, like Defendant, recommended that Plaintiff continue to take Ibuprofen as needed for pain. LaBerge Decl. Ex. 9.

98. On February 25, 2021, Defendant noted in an order that Plaintiff already had permanent foot orthoses. Farhat Decl. at ¶ 28; Farhat Decl. Ex. 28.

99. On February 26, 2021, Defendant ordered an orthotics evaluation and specifically referred to Plaintiff's loss of his previous shoes. Farhat Decl. at ¶ 28; Farhat Decl. Ex. 28.

100. In that order, Defendant noted that an orthotics evaluation was previously scheduled for November 23, 2020, but the clinic was closed due to the COVID-19 pandemic. Farhat Decl. at ¶ 28; Farhat Decl. Ex. 28.

* * *

102. By May 25, 2021, Plaintiff had seen a physical therapist who recommended a[n] exercise program and gave Plaintiff insoles. LaBerge Decl. Ex. 10.

103. On June 24, 2021, Plaintiff received Propet orthotic shoes and bilateral night splints pursuant to Defendant's recommendation. LaBerge Decl. Ex. 11-12.

104. Plaintiff was instructed on how to wear these shoes and was happy with the fit. LaBerge Decl. Ex. 12.

105. On July 14, 2021, Plaintiff told another doctor that his new shoes were helpful, but Plaintiff still requested stronger pain medication. LaBerge Decl. Ex. 13.

106. Based on Plaintiff's continued foot pain despite medications, orthotics, and physical therapy, that doctor prescribed Tramadol—an addictive opiate medication that is stronger than Ibuprofen and Tylenol—for one week, which Defendant continued. LaBerge Decl. Ex. 13; Farhat Decl. at ¶ 29, 33; Farhat Decl. Ex. 32.

///

/ / /

107.    On August 4, 2021, despite Defendant's previous recommendation that Plaintiff wear shoes when he walks, Plaintiff attended an office visit with Defendant in sandals. Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.

108.    On August 30, 2021, due to Plaintiff's continued foot pain despite multiple treatments, Defendant referred Plaintiff for steroid injections even though Plaintiff has prediabetes, and steroid injections pose a risk of increasing Plaintiff's blood glucose. Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.

109.    Plaintiff had a left plantar fascia steroid injection on October 7, 2021. Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.

110.    On October 25, 2021, Plaintiff reported that his foot pain was better. Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.

111.    On November 22, 2021, Plaintiff's psychologist communicated Plaintiff's request for a temporary work reprieve ("lay-in") to Defendant. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

112.    Defendant did not recommend a lay-in because Plaintiff did not need Tramadol or the past week, and Defendant and his staff had seen Plaintiff walking without assistance on a regular basis. Farhat Decl. at ¶¶ 31; Farhat Decl. Ex. 30.

* * *

114.    On November 24, 2021, Plaintiff told Defendant that he sometimes has foot pain while working. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

115.    Defendant offered Plaintiff a lay-in, but Plaintiff said that he did not need one. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

116.    On December 6, 2021, Defendant gave Plaintiff a lay-in lasting until December 9, 2021, but then saw that Plaintiff was walking up and down the halls in no distress on December 8, 2021. Defendant had previously given Plaintiff a lay-in on May 29, 2021. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

117.    Defendant asked Plaintiff why he was walking around even though he had a lay-in, but Plaintiff did not respond and kept walking without any difficulty. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

118.    Defendant instructed Plaintiff to rest as plantar fasciitis will flare up if Plaintiff does not rest his feet. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

119.    Defendant maintained Plaintiff's lay-in but noted that he will reassess it in the future due to Plaintiff's continued movement despite the lay-in. Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.

120.    On December 29, 2021, Defendant referred Plaintiff for another steroid injection. Farhat Decl. at ¶ 32; Farhat Decl. Ex. 31.

121.    Plaintiff had a right plantar fascia steroid injection on January 6, 2022. Farhat Decl. at ¶ 32; Farhat Decl. Ex. 31.

122.    On January 25, 2022, Defendant began weaning Plaintiff from Tramadol because [risks of] its continued use outweighed its benefits. Farhat Decl. at ¶ 33; Farhat Decl. Ex. 32.

123.    Defendant's reasoning included that opiates "are not preferred therapy for chronic non[-]cancer pain based on available evidence"; Plaintiff has a history of recreational drug use; and Plaintiff was independent in his activities of daily living and could walk. Farhat Decl. at ¶ 33; Farhat Decl. Ex. 32.

124.    Defendant recommended that Plaintiff continue with Ibuprofen for pain. Farhat Decl. at ¶ 33; Farhat Decl. Ex. 32.

125.    On March 21, 2022, Defendant indicated that he would refer Plaintiff for further injections and, if those were unsuccessful, refer Plaintiff to podiatry. Farhat Decl. at ¶ 34; Farhat Decl. Ex. 33.

126.    Defendant reiterated his recommendation that Plaintiff not walk without shoes. Farhat Decl. at ¶ 34; Farhat Decl. Ex. 33.

127.    According to the opinion of Defendant—a medical expert who has reviewed Plaintiff's medical records, including those describing his own treatment of Plaintiff—Defendant's treatment of Plaintiff was medically acceptable. Farhat Decl. at ¶¶ 4-5, 35.

* * *

130.    Defendant did not delay treatment of Plaintiff's plantar fasciitis. Farhat Decl. at ¶ 36.

131.    Instead, the COVID-19 pandemic delayed physical therapy and Plaintiff's replacement orthotic shoes. Farhat Decl. at ¶ 36.

* * *

133.    Based on his review of Plaintiff's medical records and his knowledge of plantar fasciitis, Defendant opines that treatment delays did not worsen or aggravate Plaintiff's plantar fasciitis or cause further harm. Farhat Decl. at ¶ 36.

134.    At most, Plaintiff experienced a temporary increase in his plantar-fasciitis symptoms during the time that he did not have his orthopedic shoes. Farhat Decl. Ex. 36; *see also* Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 105:10, 113:25, 114:1-16.

135.    As shown by Plaintiff's ability to walk on a regular basis without assistance while he did not have his orthopedic shoes, those symptoms did not cause a substantial harm. Farhat Decl. Ex. 36; *see also* Zalesny Decl. Ex. 4, Pl.'s Dep. Tr. 186:15-25, 187-188, 189:3-6.

14

1          ECF No. 47-1.

2          Plaintiff has not filed an opposition to Defendant's motion for summary judgment

3   or otherwise presented evidence in response to the motion.  As appropriate, the Court has

4   considered Plaintiff's verified complaint as his declaration.

5

6                              **III. DISUCSSION**

7          In the pending unopposed motion for summary judgment, Defendant argues that

8   the undisputed facts show Defendant was not deliberately indifferent to Plaintiff's medical needs.

9   See ECF No. 47.  For the reasons discussed below, the Court agrees.

10          The treatment a prisoner receives in prison and the conditions under which the

11  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

12  and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

13  511 U.S. 825, 832 (1994). The Eighth Amendment ". . .embodies broad and idealistic concepts of

14  dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

15  Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452

16  U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing,

17  shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080,

18  1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two

19  requirements are met: (1) objectively, the official's act or omission must be so serious such that it

20  results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively,

21  the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.

22  See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have

23  a "sufficiently culpable mind." See id.

24          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

25  injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105;

26  see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health

27  needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by

28  Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to

                                        15

1    treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and

2    wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

3    on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

4    also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness

5    are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)

6    whether the condition significantly impacts the prisoner's daily activities; and (3) whether the

7    condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122,

8    1131-32 (9th Cir. 2000) (en banc).

9            The requirement of deliberate indifference is less stringent in medical needs cases

10    than in other Eighth Amendment contexts because the responsibility to provide inmates with

11    medical care does not generally conflict with competing penological concerns. See McGuckin,

12    974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

13    decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).

14    The complete denial of medical attention may constitute deliberate indifference. See Toussaint v.

15    McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).

16            Defendant argues that Plaintiff will be unable to prove certain material facts

17    for which he will bear the burden of proof at trial. See ECF No. 47 pgs. 19-25.  According to

18    Defendant: (1) Plaintiff cannot prevail on a deliberate indifference claim because the undisputed

19    evidence shows that Defendant provided extensive treatment for Plaintiff's plantar fasciitis

20    condition; (2) Plaintiff cannot show that Defendant delayed treatment; (3) even if Plaintiff can

21    show delay in treatment, he still cannot prevail because the undisputed evidence shows that a

22    delay in treatment caused no further significant harm; and (4) Plaintiff cannot show more than his

23    disagreement with Defendant's course of treatment, which is not actionable under § 1983.  See id.

24        **A.    Plaintiff's Treatment for Plantar Fasciitis**

25            The Court agrees with Defendant that the undisputed evidence shows Defendant

26    consistently provided treatment to Plaintiff for his complaints related to plantar fasciitis.  A

27    review of the timeline of Defendant's treatment of Plaintiff illustrates the point.

28    / / /

1    ///

2         <u>Treatment in 2019</u> – Plaintiff first saw Defendant on October 9, 2019, following

3 his arrival at CHCF on September 12, 2019.  <u>See</u> Farhat Decl. at ¶ 6; Farhat Decl. Ex. 2.  At the

4 time, Defendant prescribed medication for Plaintiff's pain, which Plaintiff received throughout

5 his course of treatment with Defendant. <u>See</u> Farhat Decl. at ¶ 6; Farhat Decl. Ex. 2; Zalesny Decl.

6 Ex. 4, Pl.'s Dep. Tr. 28:17-18, 29:15-25, 30:1-22, 31:1-5, 73:10-13, 91:8-19.  A few days after the

7 October 9, 2019, visit with Defendant, a nurse informed Defendant on October 13, 2019, that

8 Plaintiff had requested an antifungal cream for his feet.  <u>See</u> Farhat Decl. at ¶ 8; Farhat Decl. Ex.

9 3.  Defendant ordered the requested cream the next day.  <u>See</u> Farhat Decl. at ¶ 8; Farhat Decl. Ex.

10 3.  On December 31, 2019, Defendant orders permanent therapeutic shoes for Plaintiff.  <u>See</u>

11 Farhat Decl. at ¶ 10; Farhat Decl. Ex. 8; Zalesny Decl. Ex. 2, Def.'s Req. for Admis. To Pl. No.

12 2-4; Zalesny Decl. Ex. 6, Pl.'s Resp. to Def.'s Req. for Admis. To Pl. No. 2-4; Chavez Decl. Ex.

13 1.

14         <u>Treatment in 2020</u> – Defendant renewed the order on January 28, 2020, after

15 Plaintiff lost the previously ordered shoes.  <u>See</u> Farhat Decl. at ¶ 12; Farhat Decl. Ex. 10.  At the

16 time, Defendant also ordered a temporary wheelchair for Plaintiff.  <u>See</u> Farhat Decl. at ¶ 12;

17 Farhat Decl. Ex. 11.  During a visit with Defendant on February 24, 2020, Plaintiff complained of

18 chronic pain in his feet due to plantar fasciitis.  <u>See</u> Farhat Decl. at ¶ 15; Farhat Decl. Ex. 14.

19 Defendant referred Plaintiff to a physical therapist pending a further orthotics evaluation.  <u>See</u>

20 Farhat Decl. at ¶ 15; Farhat Decl. Ex. 14.  On April 3, 2020, Defendant was informed that

21 Plaintiff continued to complaint of foot pain and Defendant instructed Plaintiff to take his

22 prescribed Ibuprofen and Tylenol and to wear his prescribed shoes when walking.  <u>See</u> Farhat

23 Decl. at ¶ 16; Farhat Decl. Ex. 15.  On April 13, 2020, Defendant was informed that physical

24 therapy, previously ordered in February 2020, was unavailable due to restrictions related to the

25 COVID-19 pandemic.  <u>See</u> Farhat Decl. at ¶ 16; Farhat Decl. Ex. 15.  Nonetheless, Defendant

26 renewed the physical therapy order on May 14, 2020.  <u>See</u> Farhat Decl. at ¶ 17; Farhat Decl. Ex.

27 16.  On May 17, 2020, Defendant maintained Plaintiff's current treatment plan despite Plaintiff's

28 complaints that his pain medications were insufficient because Defendant believed, in his

professional judgment, that Plaintiff's plantar fasciitis symptoms did not warrant stronger pain

medication.  See Farhat Decl. at ¶ 18; Farhat Decl. Ex. 17.  On June 15, 2020, Plaintiff's orthotics

evaluation was cancelled, again due to COVID-19 restrictions. See Farhat Decl. at ¶ 19; Farhat

Decl. Ex. 18.  Defendant renewed the order on July 13, 2020.  See Farhat Decl. at ¶ 20; Farhat

Decl. Ex. 19.  On July 20, 2020, Defendant ordered Plaintiff orthotic arch supports, which

Plaintiff received that same day.  See Farhat Decl. at ¶ 20; Farhat Decl. Ex. 20; Chavez Decl. Ex.

2; Zalesny Decl. Ex. 2, Def.'s Req. for Admis. to Pl. Nos. 19-21; Zalesny Decl. Ex. 6, Pl.'s Resp.

to Def.'s Req. for Admis. to Pl. Nos. 19-21.  On August 5, 2020, and September 2, 2020,

Defendant saw Plaintiff to monitor his plantar fasciitis symptoms, which did not on those dates

show significant changes.  See Farhat Decl. at ¶ 22, Farhat Decl. Ex. 22.  On September 30, 2020,

Defendant updated his order for an orthotics evaluation to include evaluation for night splints to

treat Plaintiff's plantar fasciitis symptoms.  See Farhat Decl. at ¶ 22; Farhat Decl. Ex. 23.  On

October 22, 2020, Defendant was informed by a nurse that Plaintiff continued to complaint of

foot pain despite taking prescribed pain medications and instructions that he soak and elevate his

feet.  See Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.  Defendant recommended that Plaintiff stretch

and rest his feet.  See Farhat Decl. at ¶ 23; Farhat Decl. Ex. 24.  On October 27, 2020, nursing

staff informed Defendant that Plaintiff had reported not taking his prescribed pain medications

because, according to Plaintiff, they were not working.  See Farhat Decl. at ¶ 25; Farhat Decl. Ex.

25.  At an office visit with Plaintiff on October 28, 2020, Defendant explained to Plaintiff the

importance of taking all of his medications.  See Farhat Decl. at ¶ 26; Farhat Decl. Ex. 26.

Throughout December 2020, Plaintiff continued to complain of food pain despite reports that,

during this time, Plaintiff continued to not take his prescribed medications.  See Farhat Decl. at ¶

27; Farhat Decl. Ex. 27.

        Treatment in 2021 – Defendant again ordered an orthotics evaluation for Plaintiff

on February 26, 2021.  See Farhat Decl. at ¶ 28; Farhat Decl. Ex. 28.  In that order, Defendant

noted that a prior evaluation scheduled for November 23, 2020, had been cancelled due to

COVID-19.  See Farhat Decl. at ¶ 28; Farhat Decl. Ex. 28.  By May 2021, Plaintiff had been seen

by a physical therapist who recommended an exercise program and provided Plaintiff with

insoles.  See LaBerge Decl. Ex. 10.  On June 24, 2021, Plaintiff received orthotic shoes and

bilateral night splints per Defendant's recommendation.  See LaBerge Decl. Ex. 11-12.  On July

14, 2021, Plaintiff informed another doctor that his new shoes were helpful.  See LaBerge Decl.

Ex. 13.  Based on Plaintiff's continued complaints of pain, the doctor prescribed Tramadol, an

addictive opiate, for one week, which Defendant approved.  See LaBerge Decl. Ex. 13; Farhat

Decl. at ¶ 29, 33; Farhat Decl. Ex. 32.  On August 4, 2021, despite instructions to wear his

orthotic shoes when he walks, Plaintiff reported to an office visit with Defendant in sandals.  See

Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.  Plaintiff continued to complaint of foot pain and, on

August 30, 2021, Defendant referred Plaintiff for steroid injections.  See Farhat Decl. at ¶ 30;

Farhat Decl. Ex. 29.  Plaintiff received a steroid injection on October 7, 2021.  See Farhat Decl. at

¶ 30; Farhat Decl. Ex. 29.  On October 25, 2021, Plaintiff reported that his foot pain was better.

See Farhat Decl. at ¶ 30; Farhat Decl. Ex. 29.  On November 24, 2021, Plaintiff reported to

Defendant that his foot pain was worse while he was working and Defendant offered Plaintiff a

lay-in, which Plaintiff refused.  See Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.  On December 6,

2021, Defendant ordered a lay-in for Plaintiff through December 9, 2021, but noticed on

December 8, 2021, that Plaintiff was walking up and down the halls with no apparent distress.

See Farhat Decl. at ¶ 31; Farhat Decl. Ex. 30.  On December 29, 2021, Defendant referred

Plaintiff for another steroid injection.  See Farhat Decl. at ¶ 32; Farhat Decl. Ex. 31.

Treatment in 2022 – Plaintiff received a steroid injection on January 6, 2022.  See

Farhat Decl. at ¶ 32; Farhat Decl. Ex. 31.  On January 25, 2022, Defendant began to wean

Plaintiff from Tramadol, which had originally been prescribed for one week in July 2021, because

Defendant did not think the risks outweighed the benefits.  See Farhat Decl. at ¶ 33; Farhat Decl.

Ex. 32.  Defendant, however, continued Plaintiff's prescriptions for Ibuprofen and Tylenol.  See

Farhat Decl. at ¶ 33; Farhat Decl. Ex. 32.

The foregoing facts relating to Defendant's treatment of Plaintiff's plantar fasciitis

satisfy Defendant's initial burden on summary judgment of demonstrating the non-existence of

the essential subjective element of Plaintiff's Eighth Amendment claim that Defendant was

deliberately indifferent to his serious medical needs.  In particular, the undisputed evidence shows

1    that Defendant provided Plaintiff with extensive treatment for plantar fasciitis symptoms starting

2    in 2019 upon Plaintiff's arrival at CHCF, through October 2020 when this action was initiated.

3    The evidence also shows that Defendant continued to provide Plaintiff with extensive treatment

4    during the remainder of 2020, throughout the entirety of 2021, and well into 2022.  Given this

5    extensive treatment history, which Plaintiff does not dispute, Plaintiff cannot establish that

6    Defendant was deliberately indifferent.  See Gibson v. S. Desert Corr. Ctr., 2017 WL 4076109, at

7    *5 (D. Nev. 2017) (summary judgment for prison physician in deliberate-indifference claim based

8    on plantar fasciitis where physician "examined and treated [plaintiff] repeatedly," and "[t]he

9    undisputed evidence show[ed] that [physician]'s treatment was at a high level that rose well

10   above malpractice or gross negligence").

11           **B.    <u>Delay in Providing Treatment</u>**

12           Delay in providing medical treatment, or interference with medical treatment, may

13   also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged,

14   however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin,

15   974 F.2d at 1060.  Here, Defendant raises two related argument concerning Plaintiff's delay

16   claim.  First, Defendant asserts that the undisputed evidence shows that there was no delay in

17   providing treatment for Plaintiff's plantar fasciitis.  See ECF No. 47, pgs. 18-19.  Second,

18   Defendant argues that, even if there was some delay, Plaintiff cannot show that he suffered

19   further injury as a result.  See id. at 19-23.

20           The Court also agrees with Defendant that Plaintiff cannot show that Defendant is

21   responsible for any delay.  First, as the undisputed evidence outlined here shows, there were no

22   significant delays in providing treatment, including orthotic shoes, insoles, or medications.  To

23   the extent there were short delays in Plaintiff receiving various evaluations (i.e., for orthotics and

24   physical therapy), those delays were caused by restrictions related to COVID-19 which were

25   beyond Defendant's control.  In any event, Defendant continuously renewed the referrals for

26   orthotics evaluation and physical therapy, both of which ultimately occurred.

27   / / /

28   / / /

1    Moreover, even if there was delay attributable to Defendant's conduct, Plaintiff

2    cannot show that he suffered additional injury as a result.  As Defendant's undisputed evidence

3    shows, any continued pain Plaintiff experienced was due to his failure to follow Defendant's

4    prescribed course of treatment.

5    For these reasons, the Court finds that Defendant has met his initial burden on

6    summary judgment of demonstrating the non-existence of a material fact.  Because Plaintiff has

7    not offered any evidence to put Defendant's evidence in dispute, the Court concludes that

8    Defendant is entitled to judgment in his favor as a matter of law to the extent Plaintiff's Eighth

9    Amendment claim is based on a delay in providing medical treatment.

10    **C.    Disagreement with Course of Treatment**

11    A difference of opinion between the prisoner and medical providers concerning the

12    appropriate course of treatment does not generally give rise to an Eighth Amendment claim.  See

13    Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, a claim involving alternate

14    courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment

15    was medically unacceptable under the circumstances; and (2) the alternative treatment was

16    chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung,

17    391 F.3d 1051, 1058 (9th Cir. 2004).

18    As Defendant notes, the gravamen of Plaintiff's complaint in this action is

19    Plaintiff's disagreement with Defendant's course of treatment.  Specifically, Plaintiff challenges

20    Defendant's discontinuation of opioid pain medications in favor of non-addictive medications.

21    Plaintiff, however, has provided no evidence to indicate that the chosen course of treatment was

22    medically unacceptable or that an alternative course of treatment was chosen in disregard of an

23    excessive risk to Plaintiff's health.  To the contrary, Defendant's evidence, which Plaintiff does

24    not dispute, shows that the course of treatment in this case was medically acceptable and

25    undertaken in an ongoing effort to address Plaintiff's complaints.  Again, the Court agrees with

26    Defendant that judgment as a matter of law in his favor is warranted in this case based on the

27    overwhelming evidence presented which Plaintiff does not challenge.

28    / / /

1

## IV. CONCLUSION

2    Based on the foregoing, the undersigned recommends that Defendant's unopposed

3 motion for summary judgment, ECF No. 47, be GRANTED.

4    These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

6 after being served with these findings and recommendations, any party may file written objections

7 with the Court. Responses to objections shall be filed within 14 days after service of objections.

8 Failure to file objections within the specified time may waive the right to appeal. See Martinez v.

9 Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11 Dated:  July 18, 2025

12
_____
DENNIS M. COTA
13                                              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28